UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

CHARLES WUNDERLICH,    )
            Plaintiff  )
                       )
                       )
    v.                 )    Case No.
                       )
DR. ALLRED;            )
UNITED STATES OF AMERICA;  )
            Defedants  )

**FILED**

JUL 02 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

COMPLAINT WITH JURY DEMAND

INTRODUCTION    2:24 - CV 1847 - —— CKD PC

This is a civil rights action filed by Charles Wunderlich,
a federal prisoner, for damages under the Federal Tort Claims
Act and <u>Bivens</u>, alleging deliberate indifference to a serious
medical need in violation of the Eighth Amendment to the United
States Constitution, and torts of neglect and medical malpractice.

JURISDICTION

1.   This Court has jurisdiction over the Plaintiff's claims
of federal constitutional rights under 42 U.S.C. § 1331(a) and 1343.

2.   This Court has supplemental jurisdiction over the
plaintiff's state law tort claim under 28 U.S.C. § 1367.

PARTIES

3.   The plaintiff, Charles Wunderlich, was a convicted and
sentenced person and was in the medical care of Dr. Allred
throughout the incident.

4.   Defendant Dr. Allred is a doctor working for FCI
(Federal Correctional Institution) Herlong, in California, and

(1)

was Plaintiff's primary physician during the events described in this action, and is being sued in his personal capacity.

5. Defendant, United States of America, had custody of Plaintiff during the incident, and is being sued under the FTCA through the professional capacity of Dr. Allred.

## FACTS

6. For over a decade, Plaintiff has taken much needed psychiatric medication to combat depression, hallucinations, and bi-polar disorder. Exhibit A; Declaration of Charles Wunderlich, at ¶ 3. These severe issues were a result of a tramatic brain injury occuring from a bike accident in 2012. id. at ¶ 2.

7. The litany of medications prescribed while within the BOP was for anxiety, hallucinations, depression, and pain management. id., at ¶ 4; Exhibit A. Another much needed medication was for controlling his frequent seizures, which worked so well that he only experienced one while he was taking it. Declaration of Charles Wunderlich, at ¶ 4.

## DELIBERATE INDIFFERENCE AND
## NEGLECT AND MEDICAL MALPRACTICE

8. For no medical justification, and going against the findings of the specialist whom prescribed the medications in the first place, Dr. Allred discontinued all medications. id. at ¶ 5; Exhibit B, pages 2 - 4 (Active Prescriptions, 7/21/2023).

9. The effects of discontinuing these medications were immediate. He started hearing voices telling him to kill

(2)

himself, Exhibit A, and suffered two seizures before medical staff deemed it necessary to restart his life saving treatment. Declaration of Charles Wunderlich, at ¶ 5, 6.  But this was not done through the Doctor whom denied it to him in the first place, Dr. Allred, but by a Nurse whom finally decided to resume his medications after Plaintiff's several attempts to get put back on them were ignored.  id., at ¶ 5; Exhibit C.

10. As damaging as these seizures were, the collateral effects are not over.  To this day, Plaintiff is experiencing constant mental duress and memory loss.

## CLAIMS FOR RELIEF

11. The actions of defendant Dr. Allred, in his deliberate indifference to Mr. Wunderlich's serious medical need, constituted Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

12. The actions of defendant Dr. Allred, in his indifference to Mr. Wunderlich's serious medical need, constituted the tort of neglect and medical malpractice under the laws of California.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff requests that this Court grant the following relief:

A.  Issue a declaritory judgement stating that the actions of Dr. Allred violated the plaintiff's rights under the United States Constitution, and under the state laws of California.

(3)

B.  Issue an award for compensatory damages in the amount of $ 2,500,000

C.  Issue an award for punitive damages in the amount of $ 2,500,000

D.  Any other relief this Court deems just and appropriate.

Signed on: June 21, 2024

*Charles Wunderlich*
Charles Wunderlich
# 78867-112
FCI Butner Medium II
PO Box 1500
Butner, NC 27509

(4)

DECLARATION OF CHARLES WUNDERLICH

1) I, Charles Wunderlich, am the plaintiff in the caused action, am over the age of 18, and am competent to make this declaration.

2) Back in 2012, I had had a dirbike accident that resulted in a severe head trauma called a sub-durmal hematoma to the right temporal lobe.

3) Shortly after, and as a result of that injury, I was diagnosed with constant dizziness and bi-polar disorder. Due to these diagnoses, I have been under the care of mental health professionals whom prescribed me medications to manage these health issues. These medications continued after I began my period of incarceration.

4) These medications effectively controlled my ailments. Specifically, I was taking Buzpirone for anxiety, Olanzapine for hallucinations, Bupropion for depression, Ibuprofin for pain management, and Lamotragine for seizures and bi-polar disorder. The Lamotragine was working so well, that I had only experienced one siezure while on it - which was from 2018 until now.

5) For some reasons, without any justification to do so, Dr. Allred cancelled all of my medications. Despite several attempts to get put back on these much needed medications, I was denied them from April 29, 2023 to June 15, 2023. It was only until the intervention of NP-C Burnett did my medications resume.

6) During this time, these 45 days, I experienced two seizures. One of them can be verified by my then cell-mate Tristan Warhen, Warner, Federal Reg. No. 25917-509.

7) Because of these seizures, I am experiencing short-term memory loss and mental duress.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

Signed on: June 21, 2024

*Charles Wunderlich*
Charles Wunderlich
# 78867-112
FCI Butner Medium II
PO Box 1500
Butner, NC 27509

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

CHARLES WUNDERLICH,                    )
            Plaintiff                  )
                                       )
    v.                                 )
                                       ) Case No.
DR. ALLRED;                            )
UNITED STATES OF AMERICA;              )
            Defendants                 )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S COMPLAINT

### ARGUMENT

As a threshold matter, the Eigth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishment." Further, a claim under Bivens allows for a federal employee to be sued in their personal capacity when their actions violate constitutional rights of others. When Defendant violated Plaintiff's constitutional Eighth Amendment right protecting against deliberate indifference, Defendant gave up the protections afforded to him under the umbrella of qualified immunity.

### A.  Pro-se filings are held to a less stringent standard

Plaintiff is a pro-se litigant, and this Court should thus entitle Movant's pleadings to a more liberal standard than which this Court is accustomed to, and should construe any such pleadings for meaning and intent wherever there exists definciencies in form or structure. Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197 (per curium); Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173

(1)

(1980) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21, 92 S. Ct. 594 (1972) (per curium) (pro se filings are entitled to liberal construction)).

B. Standard of review for claims under <u>Bivens</u> following the <u>Egbert</u> case

For years, Constitutional violations committed against an inmate by a federal employee created a legitimate cause of action under <u>Bivens</u>.  That was until the <u>Egbert</u> case was decided, which narrowed the circumstances in which a Petitioner qualifies for constitutional claims of damages against a federal official. <u>Egbert v. Boule</u>, 142 S. Ct. 1793, 213 L. Ed. 2d 54 (2022).  First, this Court must determine whether Petitioner's case presents a new <u>Bivens</u> context," and if it does, whether "there are special factors indicating the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  And, "if there is even a single reason to pause before applying <u>Bivens</u> in a new context, a court may not recognize a <u>Bivens</u> remedy."  <u>id.</u> at 1803.

A case presents a new context if it "is different in a meaningful way from previous <u>Bivens</u> cases decided by [the Supreme] Court." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 137 S. Ct. 1843, 1859 (2017).  As of now, the Supreme Court has recognized three cases that may proceed under <u>Bivens</u>: the <u>Bivens</u> claim itself, which allows damages for unlawful search and seizure under the Fourth Amendment; in <u>Davis v. Passman</u>, for a Fifth Amendment violation claiming dismissal based on sex; and in <u>Carlson v. Green</u>, for an Eighth Amendment claim for failure to provide adequate medical care.

(2)

Beyond those three cases, the Supreme Court declined "to create an exhaustive list of differences that are meaningful enough to make a given context a new one[.]" Ziglar, 137 S. Ct. at 1859-60. Even so, they provided instructive examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider. Abbasi, 137 S. Ct. at 1860.

Be that the case, Plaintiff's Bivens claim can and should proceed as the Carlson case allows for it.

### C.   Standard of review for claims of deliberate indifference to a serious medical need

The Eighth Amendment requires that prison officials "provide humane conditions of confinement," Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970 (1994), which includes, among other things, "reasonable measures to guarantee the safety of the inmates." id. To prevail on the merits of the case, Petitioner must demonstrate that "the prison official acted with a sufficiently culpable state of mind (subjective component) and... the deprivation suffered or injury inflicted on [Plaintiff] was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)).

A medical condition is serious enough to satisfy the objective component if it has "been diagnosed by a physician as mandating

(3)

treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." id. (citing Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016).

The subjective component has two parts: when he possessess knowledge of the risk of harm to an inmate, and knows that "his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Iko, 535 at 241 (emphasis and internal quotation marks omitted). While mere negligence is not enough, De'lonta v. Angelone, evidence of an officials "actual purposive intent" is not required. 330 F.3d 630, 634 (4th Cir. 2003) (citing De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013)). "Instead, deliberate indifference is most akin to criminal-law recklessness." id. To prove an official acted with deliberate indifference, "plaintiff must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Scinto, at 225 (brackets in original) (quoting Farmer, 511 U.S. at 837).

(4)

D.  Standard of review for tort claims of neglect
    and medical malpractice in the state of
    California

Since Plaintiff's case arose while he was housed within the BOP in California, California law as to neglect and medical malpractice applies. Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) ("Because [appellant's] tort claims are brought under the FTCA, and the events at issue occured in California, we apply California tort law.")

Under the laws of California, those whom claim negligence must meet each element of a four-part test.  Those are: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)."  Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994, 70 Cal. Rptr. 3d 519 (2008)).

"To establish medical malpractice, a plaintiff must state all of the following: (1) that the defendant was negligent; (2) that the plaintiff was harmed; and (3) that the defendant's negligence was a substantial factor in causing the plaintiff's harm." Mendez v. United States, No. 1:17-CV-00555OLJO-MJS (PC), 2018 U.S. Dist. LEXIS 60834, 2018 WL 1729133, at * 14 (E.D. Cal. Apr. 10, 2018), report and recommendation adopted, 2018 U.S. Dist. LEXIS 109379, 2018 WL 3218369 (E.D. Cal. June 29, 2018) (citing Ladd v. Cnty. of San Mateo, 12 Cal. 4th 913, 917, 50

(5)

Cal. Rptr. 2d 309, 911 P.2d 496 (1996)). "The standard of care in a medical malpractice case requires that medical service providers exercise that... degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances." Id. (citing Barris v. Cnty. of Los Angles, 20 Cal. 4th 101, 108, 83 Cal. Rptr. 2d 145, 972 P.2d 966 (Cal. 1999); Landeros v. Flood, 17 Cal. 3d 399, 408, 131 Cal. Rptr. 69, 551 P.2d 389 (1976)); see also W. Page Keeton et al., Prosser and Keeton on the Laws of Torts § 32, at 187 (5th ed. 1984) (A doctor commits malpractice if he causes injury by failing "to have and use the knowledge, skill, and care ordinarily possessed and employed by members of the profession in good standing.")

### E. Defendant's actions amounted to deliberate indifference to Plaintiff's serious medical needs

Plaintiff has suffered through seizures, among other documented medical conditions, since a bike accident that occured back in 2012. This was not something that spontaniously presented itself while Plaintiff was housed within the BOP. In fact, shortly after the accident, the medical conditions were identified, and treatment quickly followed. These treatments were in the form of various medications that were ordered by doctors in the field of psychiatry, a field that is dedicated to the diagnostic and treatment of mental disorders such as what Plaintiff was experiencing. The fact that treatment for

(6)

these disorders continued while Plaintiff was in BOP custody shows that the Psychiatrist within the BOP recognized the need for these medications. And as a logical extention to that, that there was some underlying illness that prompted the use of these medications.

Then Defendant took Plaintiff off of all medications for no valid justification. While an argument might be made that Plaintiff had not suffered any of the afflications the medications were supposed to treat, and therefore the medications were not necessary, that fact only speaks to the efficiency of the medications and was in no way an idication as to the severity of Plaintiff's illnesses. Point in case, Plaintiff began reporting hallucinations telling him to kill himself. He had two seizures in which the lasting effects is memory loss and mental duress. Defendant knew of his serious medical needs, and despite specialists deciding otherwise, Defendant took away potentially life saving medications resulting in physical and mental injury.

To compound these issues is the fact that Defendant then ignored Plaintiff's several requests to remedy the situation. It was not until other staff intervened that Plaintiff was started back on his medications. And in all that time, Plaintiff was suffering.

For these reasons, Defendant was deliberately indifferent to Petitioner's serious medical needs.

(7)

F.    Defendant's actions amount to negligence and
      medical malpractice in violation of California
      state law

Plaintiff incorporates by reference Section E of this brief as it relates to claims of neglect.

Medications have long been perscribed to treat a variety of illnesses.  Mental health treatments are no different.  This fact can be proven as various doctors have issued various medicines to treat Plaintiff's medical conditions.  To completely stop all treatment was an unnecessary risk to the live and health of Plaintiff.  Defendant did so against the findings of the specialist whom prescribed them in the first place.  He did so with the justification.  And because of him removing all medications, Plaintiff started having seizures and hearing voices that told him to kill himself.

That Defendant was negligent, the standard for that finding is easily met.  Going further to claims of medical malpractice, Plaintiff has to prove that Plaintiff was harmed, and that Defendant's negligence was a substantial factor in causing that harm.  Immediately following the removal of those medications Plaintiff started experiencing the same symptoms that the medications were perscribed to treat.  It may be true that Plaintiff experienced a seizure while he was taking the medications, but while he experienced that one event over a period of years, he endured two within 45 days of them being denied to him. Since, Plaintiff had been put back on the medications, and has not had another seizure  or reports of hallucinations.

For these reasons, Defendant was negligence and his conduct

(8)

amounted to medical malpractice.

## CONCLUSION

WHEREFORE, for the aforementioned reasons, Plaintiff's suit should prevail and he be granted all relief requested.

Submitted on: June 21, 2024

Charles Wunderlich
Charles Wunderlich
# 78867-112
FCI Butner Medium II
PO Box 1500
Butner, NC 27509

(9)



# Bureau of Prisons
## Health Services
## Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: | WUNDERLICH, CHARLES DOUGLAS | | Reg #: | 78867-112 |
| Date of Birth: | 01/31/1985 | Sex: M   Race: WHITE | Facility: | HER |
| Encounter Date: | 06/14/2023 12:26 | Provider: Burnett, Ronald (MAT) | Unit: | Z05 |

Mid Level Provider - Evaluation encounter performed at Special Housing Unit.

**SUBJECTIVE:**

COMPLAINT  1        Provider:  Burnett, Ronald (MAT) FNP-C

Chief Complaint:   MENTAL HEALTH

Subjective:   Inmate reports a history of medication use for bipolar d/o and depression since 2012. He reports previous use of Keppra for seizures. Keppra was apparently discontinued, and he was prescribed lamotrigine. Inmate has not had access to his prescribed medications since March 2023. Patient reports getting up to use the bathroom on 5/25/2023, and suddenly awakening to find he had passed out. Self-reported symptoms include both muscle rigidity and disorientation after event. Inmate's history is somewhat ambiguous, he has been evaluated on multiple occasions and each encounter appears inconsistent.

On 9/27/2022 patient reported thoughts of suicide, and "bugs attacking him during the night". According to clinical encounter, he did have excoriations to back, abdomen, chest, arms, and legs. What does appear consistent is his medication history. He has consulted with HER Psychology on several occasions and, according to inmate, has verbalized depression on multiple occasions.

Inmate reports "voices telling me to kill myself" this day.

Plan: I will reinstate previously prescribed medication therapies as he reports good relief with medications. My assumption is that inmate was prescribed Lamictal for bi-polar d/o rather than seizures. He will need to speak again with Psychology for definitive diagnostic criteria compatible with self-reported symptoms.

Pain:        No

**OBJECTIVE:**

**ASSESSMENT:**

Bipolar disorder, F319 - Current

Unspecified Personality Disorder, F60.9 - Current

**PLAN:**

**Renew Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| 468815-CP1 | lamoTRIgine 100 MG Tab | 06/14/2023 12:26 |
| | **Prescriber Order:**   Take one-half (1/2) tablet (50 MG) by mouth twice daily **intake** x 90 day(s) | |
| | Indication:  Bipolar disorder | |
| 468813-CP1 | busPIRone 15 MG TAB | 06/14/2023 12:26 |
| | **Prescriber Order:**   Take one tablet (15 MG) by mouth twice daily **intake** x 90 day(s) | |
| | Indication:  Bipolar disorder | |
| 613226-VIX | OLANZapine  5 MG Tab | 06/14/2023 12:26 |




| | | | |
|---|---|---|---|
| nplex: HER--HERLONG FCI | Begin Date: 07/21/2022 | End Date: 07/21/2023 |
| ate: WUNDERLICH, CHARLES DOUGLAS | Reg #: 78867-112 | Quarter: Z05-224LAD |

## Active Prescriptions

**Rx#:** 212291-PHX  **Doctor:** Scott, K. NP-C
**Start:** 12/15/22  **Exp:** 03/28/23  **D/C:** 12/27/22  **Pharmacy Dispensings:** 28 TAB in 103 days

busPIRone 15 MG TAB
Take one tablet (15 MG) by mouth twice daily **intake**
**Rx#:** 468813-CP1  **Doctor:** Allred, D. (MAT) DO/CD
**Start:** 03/30/23  **Exp:** 04/29/23  **Pharmacy Dispensings:** 60 TAB in 30 days

*April 29 — June 15th no meds*

busPIRone 15 MG TAB
Take one tablet (15 MG) by mouth twice daily
**Rx#:** 501564-CP1  **Doctor:** Allred, D. (MAT) DO/CD
**Start:** 06/15/23  **Exp:** 09/13/23  **Pharmacy Dispensings:** 120 TAB in 36 days

busPIRone 15 MG TAB
Take one tablet (15 MG) by mouth twice daily *consent form on file * 09/27/2022
**Rx#:** 613224-VIX  **Doctor:** Rutledge, Franklin (MAT) MD/WXR MAST Physician
**Start:** 12/30/22  **Exp:** 04/12/23  **D/C:** 03/29/23  **Pharmacy Dispensings:** 168 TAB in 103 days

Escitalopram Oxalate 10 MG Tab
Take one tablet (10 MG) by mouth each day ***pill line*** ***pill line***
**Rx#:** 210401-PHX  **Doctor:** Ford, Isaiah (MAT) MD/CD
**Start:** 09/28/22  **Exp:** 03/27/23  **D/C:** 09/29/22  **Pharmacy Dispensings:** 30 TAB in 180 days

Escitalopram Oxalate 10 MG Tab
Take one tablet (10 MG) by mouth each day ***pill line*** ***pill line***
**Rx#:** 210479-PHX  **Doctor:** Scott, K. NP-C
**Start:** 09/29/22  **Exp:** 03/28/23  **D/C:** 09/30/22  **Pharmacy Dispensings:** 30 TAB in 180 days

Ibuprofen 800 MG Tab
Take one tablet (800 MG) by mouth twice daily
**Rx#:** 209203-PHX  **Doctor:** Ford, Isaiah (MAT) MD/CD
**Start:** 08/19/22  **Exp:** 09/18/22  **D/C:** 08/24/22  **Pharmacy Dispensings:** 60 TAB in 30 days

Ibuprofen 800 MG Tab
Take one tablet (800 MG) by mouth twice daily
**Rx#:** 209336-PHX  **Doctor:** Ford, Isaiah (MAT) MD/CD
**Start:** 08/24/22  **Exp:** 09/23/22  **Pharmacy Dispensings:** 6 TAB in 30 days

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily
**Rx#:** 209206-PHX  **Doctor:** Ford, Isaiah (MAT) MD/CD
**Start:** 08/19/22  **Exp:** 09/18/22  **D/C:** 08/24/22  **Pharmacy Dispensings:** 30 TAB in 30 days

| | | |
|---|---|---|
| **Complex:** HER--HERLONG FCI | **Begin Date:** 07/21/2022 | **End Date:** 07/21/2023 |
| **Inmate:** WUNDERLICH, CHARLES DOUGLAS | **Reg #:** 78867-112 | **Quarter:** Z05-224LAD |

## Active Prescriptions

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily
**Rx#:** 209337-PHX     **Doctor:** Ford, Isaiah (MAT) MD/CD
**Start:** 08/24/22     **Exp:** 09/23/22     **D/C:** 09/22/22     **Pharmacy Dispensings:** 3 TAB in 30 days

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily
**Rx#:** 210179-PHX     **Doctor:** Scott, K. NP-C
**Start:** 09/22/22     **Exp:** 12/21/22     **D/C:** 09/28/22     **Pharmacy Dispensings:** 14 TAB in 90 days

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily ***pill line*** ***pill line***
**Rx#:** 210402-PHX     **Doctor:** Ford, Isaiah (MAT) MD/CD
**Start:** 09/28/22     **Exp:** 03/27/23     **D/C:** 09/29/22     **Pharmacy Dispensings:** 30 TAB in 180 days

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily ***pill line*** ***pill line***
**Rx#:** 210480-PHX     **Doctor:** Scott, K. NP-C
**Start:** 09/29/22     **Exp:** 03/28/23     **D/C:** 12/15/22     **Pharmacy Dispensings:** 90 TAB in 180 days

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily
**Rx#:** 212292-PHX     **Doctor:** Scott, K. NP-C
**Start:** 12/15/22     **Exp:** 03/28/23     **D/C:** 12/27/22     **Pharmacy Dispensings:** 14 TAB in 103 days

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily **intake**
**Rx#:** 468815-CP1     **Doctor:** Allred, D. (MAT) DO/CD
**Start:** 03/30/23     **Exp:** 04/29/23     **Pharmacy Dispensings:** 30 TAB in 30 days

*45 days w/o seizure meds (Any meds at all*

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily
**Rx#:** 501566-CP1     **Doctor:** Allred, D. (MAT) DO/CD
**Start:** 06/15/23     **Exp:** 09/13/23     **Pharmacy Dispensings:** 60 TAB in 36 days

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily [Intake- Missing consent form]
**Rx#:** 613225-VIX     **Doctor:** Rutledge, Franklin (MAT) MD/WXR MAST Physician
**Start:** 12/30/22     **Exp:** 01/29/23     **Pharmacy Dispensings:** 25 TAB in 30 days

lamoTRIgine 100 MG Tab
Take one-half (1/2) tablet (50 MG) by mouth twice daily *consent form on file * 02/16/2023
**Rx#:** 618661-VIX     **Doctor:** Wolverton, Brigitte (MAT) PA-C

| **Complex:** | HER–HERLONG FCI | **Begin Date:** 07/21/2022 | **End Date:** 07/21/2023 |
|---|---|---|---|
| **Inmate:** | WUNDERLICH, CHARLES DOUGLAS | **Reg #:** 78867-112 | **Quarter:** Z05-224LAD |

## Active Prescriptions

**Start:** 03/06/23      **Exp:** 05/05/23      **D/C:** 03/29/23      **Pharmacy Dispensings:** 28 TAB in 60 days

OLANZapine  5 MG Tab
Take one tablet (5 MG) by mouth each evening ***pill line*** ***pill line***
**Rx#:**  210403-PHX      **Doctor:** Ford, Isaiah (MAT) MD/CD
**Start:** 09/28/22      **Exp:** 10/28/22      **D/C:** 09/29/22      **Pharmacy Dispensings:** 30 TAB in 30 days

OLANZapine  5 MG Tab
Take one tablet (5 MG) by mouth each evening ***pill line*** ***pill line***
**Rx#:**  210481-PHX      **Doctor:** Ford, Isaiah (MAT) MD/CD
**Start:** 09/29/22      **Exp:** 03/28/23      **D/C:** 12/15/22      **Pharmacy Dispensings:** 90 TAB in 180 days

OLANZapine  5 MG Tab
Take one tablet (5 MG) by mouth each evening
**Rx#:**  212293-PHX      **Doctor:** Ford, Isaiah (MAT) MD/CD
**Start:** 12/15/22      **Exp:** 03/28/23      **D/C:** 12/27/22      **Pharmacy Dispensings:** 14 TAB in 103 days

OLANZapine  5 MG Tab
Take one tablet (5 MG) by mouth each evening
**Rx#:**  501568-CP1      **Doctor:** Allred, D. (MAT) DO/CD
**Start:** 06/15/23      **Exp:** 09/13/23            **Pharmacy Dispensings:** 60 TAB in 36 days

OLANZapine  5 MG Tab
Take one tablet (5 MG) by mouth each evening *consent form on file * 11/10/2021
**Rx#:**  613226-VIX      **Doctor:** Rutledge, Franklin (MAT) MD/WXR MAST Physician
**Start:** 12/30/22      **Exp:** 04/12/23      **D/C:** 03/29/23      **Pharmacy Dispensings:** 84 TAB in 103 days

## Active OTC

| **Medication** | **OTC Source** | **Start Date** | **Stop Date** |
|---|---|---|---|
| Selenium Sulfide Shampoo/Lotion 1%, (OTC) 207ML | Covid-19 Policy Exception | 01/12/2022 | 08/18/2022 13:02 |

   **Order Details:** per package instructions



**Berry, Allison (BOP)**

| | |
|---|---|
| **From:** | Albonico, Amber (BOP) |
| **Sent:** | Saturday, April 29, 2023 10:16 AM |
| **To:** | Berry, Allison (BOP) |
| **Subject:** | Wunderlich 78867-112 |

Just an FYI. This inmate stopped me again during my pill line rounds asking about his medications. I noted that you had sent him a response on 4/22/23. I also sent him one today so it could be tracked. I looked through his stuff again and noted that Higgins had addressed this on 4/5/23 and Dr. Allred cancelled it on 4/10/23. With no other notes about it.

This guys has a long document psych history and a history of taking many medications.

Is there anything we can do about this? At least have it addressed either way? I saw your sick call appointment but it just states testicle issue. I'm not sure if he will prioritize to include talking to him about his medication. Do I just tell the inmate to file a complaint next time he stops me?

GRRRRRRRR...this is getting very frustrating!

Inmate

Reg#: 78867-112        ...        ☿ Ψ WUNDERLICH, CHARLES DOUGLAS

Details

| | | | |
|---|---|---|---|
| Activity: Follow-up | | Sched. Provider: Physician | |
| Priority: Normal | | Frequency: One Time | |
| Scheduled Date: 04/05/2023 | | End Date: | |
| | M   T   W   T   F   S   S | | |
| Time(s): 0000 | | | |
| Status: Canceled | | | |
| Actual Provider: Allred, D. (MAT) DO/CD | | | |
| Completed Date: 04/10/2023 | Time 1250 | | |
| Comments: | Inmate requests follow-up regarding d/c of olanzapine medication. | | |
| | ccc pending | | |

Scheduled By: Higgins, Elisabeth RN
Last Entered By: Allred, D. (MAT) DO/CD
Last Updated Dt: 04/10/2023 15:50:48 EST
Orig. Entered Dt: 04/05/2023 17:14:16 EST

**Amber Albonico RN, BSN**
Health Services

1



Exhibit D

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: **Wunderlich Charles D**   **78867-112**   **TAHOE**   **Herlong**
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A - REASON FOR APPEAL**

I submitted a BP-10 to regional on Sep 11 via legal mail to officer Depillo in Herlong SHU. It never got there. Was in transit until the beginning of Nov. No response received or req. reciept of acknowlegment from C/m. W/m Bell here says in an unprintable E-mail that its closed. It is _not_, I respectfully resubmit said BP-10 for deliberate indifference cont'D

12/29/23
DATE

Charles D Wunderlich
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

Received

FEB 2 7 2024

Western Regional Office

DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

REGIONAL DIRECTOR

CASE NUMBER: 1164106-R4

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

DATE   SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN   PRINTED ON RECYCLED PAPER   BP-230(13)
JUNE 2002

Cont'D BP-10 re-sub

Since BP-10 116406-R1 magically dissappeared I re-submit to include new evidence of deliberate Indifference Dr. Allred in Herlong FCI denied me my meds for a period of 45 days. In the Interim of these 45 days I had 2 siezures. One of them formally reported directly to medical Staff via 4/m moore in herlong SHU. I have all assoc. documents proving this to be true; to include Emails from Amber Albonico on April 29th where Dr. Allred was shown Cancelling out med. Appt on 4/10 after nurse higgins Addressed issue of 4/5 & email from AHSA Berry on May 28th after Siezure occurred & Still no meds ordered. The law says that the Doctor (Dr. Allred) must have been Subjectively aware of a Serious ~~consoq~~ risk of Harm & must have Conciously disregarded that risk Dr. Allred was made aware of this by Medical Staff to include: Higgins, Haggard, Albonico, Burnett, & Berry & unit team 4/m moore on May 26th. He was made aware of Serious medical need multiple times & continued to remain deliberatlty Indifferent to that medical need. I'm requesting Settlement Of FtCA # TRT-WXR-2024-01271 recieved On 11/29/23 by Dennis M. Wong of Western Regional Counsel

That you for you time

1164086R4

- FCI Butner (Event Facility: FC Herlong)

This is in response to your Administrative Remedy of the Warden's decision dated June 16, 2023. You allege inadequate medical care for your medication concerns. Specifically, you claim prescriptions were not filled for a period of forty-five days. As relief, you are requesting settlement of a Federal Tort claim.

Your appeal has been investigated. Your condition is continually monitored through the Chronic Care Clinic (CCC) for Mental Health concerns.

Our investigation revealed, you were transferred from FCI Herlong on October 12, 2023, to FCI Butner. The authority to prescribe, change or discontinue the use of prescription-only medication is the purview of a medical provider and is a clinical decision which cannot be changed by an administrative remedy. Accordingly, your departure from FCI Herlong also renders your request moot as your medical care is now provided by FCI Butner.

Be advised, the Administrative Remedy process does not provide for monetary compensation. If you seek monetary compensation, you must file a Claim for Damage, Injury or Death under the provisions of the Federal Tort Claims Act, 28 U.S.C. 2671, et seq. You may obtain the appropriate form from your unit staff.

The Bureau of Prisons takes allegations of employee misconduct seriously. All employees are held to a high standard of treating inmates fairly, impartially, and humanely. Employee misconduct allegations are reviewed, and, if a determination is reached that an investigation is warranted, it is referred to the proper investigating authority. However, information concerning employee conduct and performance is protected by the Privacy Act, 5 U.S.C. §552(a).

Accordingly, this response is for informational purposes only. If dissatisfied with this response, you may appeal to the Office of the General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C. 20534. Your appeal must be received in the General Counsel's office within 30 calendar days of the date of this response.

3/26/24
Date

M. Rios-Marques, Regional Director



**U.S. Department of Justice**

**Federal Bureau of Prisons**

*Western Regional Office*
*7338 Shoreline Drive*
*Stockton, California 95219*

JAN 0 9 2024

**VIA CERTIFIED MAIL**

Douglas Wunderlich
Register Number 78867-112
Federal Correctional Institution
PO Box 1500
Butner, NC 27509

Re:   Administrative Claim No. TRT-WXR-2024-01271

Dear Mr. Wunderlich:

This is in response to the administrative claim submitted to this office under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671, et seq. You seek $5,000,000.00 in compensation for alleged personal injury as a result of events at the Federal Correctional Institution, Herlong, California on May 25, 2023.

Investigation fails to disclose any evidence of negligence or other conduct for which the United States is liable. You have failed to establish that you have suffered a loss or personal injury as a result of staff negligence in this matter.

Accordingly, your claim is denied.   If you are not satisfied with this determination, you are afforded six months from the date of the mailing of this letter via certified mail within which to bring suit in the appropriate United States District Court.

Sincerely,

DENNIS M. WONG
WESTERN REGIONAL COUNSEL

Dominic Ayotte
Deputy Regional Counsel/CLC Supervisor

cc:   Warden
      FCI, Herlong

DA/jmv

I am waiting currently on a response to BP-11 1164706-A1 from office of the General Counsel. Included is copy of BP-10 that unit manager Griffen & A/w Sally stonewalled & didn't want to help me find until 2 weeks after it was due on April 29, 24'.

June 21st, 2024    *Thank you *

X Charles Wunderlich